Good morning, Your Honor. May it please the Court. Your Honors, Chase Golink, federal defender on behalf of the appellant, Mr. Calero. Your Honor, the District Court erred in two respects. First, the District Court erred by failing to grant Mr. Calero's motion for acquittal pursuant to Rule 29. Second, the District Court erred by failing to grant a severance, severing Counts 1 and 2 from Counts 3 and 4 pursuant to Rule 8 and Rule 14. Now I'd like to begin with my Rule 29 argument. The Supreme Court in OPPER voices concern about the inherent unreliability of confessions. And they also voice their concern about and noted that our system of justice is not one that can rely solely upon an unsubstantiated and uncorroborated confession. And in so doing, they formally lay the rule that defendants unaccused of his confession must be corroborated by some independent evidence. Well, there really are only two questions as to that issue, I think. And one — the two questions are, are we talking about core issue or core conduct when we talk about the financial aspect? And that depends on the statute. Is the — for the conviction, is the element of the act being done for financial consideration? Does that fall within the core conduct? The second issue is, was there sufficient corroboration? And in that respect, the state — the government relies on a case called Sy, I think, of TSAI. Aren't those the two questions with respect to your first argument? Yes, Your Honor, I think they are. However, I think it's a bit broader. Our understanding — I think the case law in Lopez-Alvarez states that the core of the offense is defined a bit broader than the government would like to. Well, that's what I said. That's the question. What's the definition of core conduct? Does it include the financial consideration aspect? Yes, Your Honor. You say it does. The government says it doesn't. Yes, Your Honor, I believe it does. And it's my position — the definition I understand of the corpus lecta rule and of the core of the offense is that it's specified in the dissent in Corona-Garcia. And it is that there must be an existence of an injury that forms the core of the offense and a link to the criminal actor. Now, I think the core in this offense — Are you citing from a dissent? Yes, Your Honor. But, you know, dissents aren't really binding precedent. No, Your Honor, I agree with that. But I think Lopez-Alvarez is. And I think my interpretation — I think you'd do better sticking to Lopez-Alvarez. Very well, Your Honor. That's a good opinion. I agree. And under Lopez-Alvarez, regardless of how we define the — well, I think perhaps I should better state there really was no evidence here. There's no evidence presented independent of the confession to any of the elements, not only to the financial gain element, but also to the fact of an injury. No evidence? Yes, Your Honor. There's a lot of confusion. There's a lot of argument about what the evidence was. But I think that the best way to really see what the evidence was is to look at the record. Now, the government called only one witness, Inspector Oliveri, that was present during count one. Inspector Oliveri testified that he had no personal knowledge of Mr. Calero, and that's on ER 210. Testified that he gained all of his information from other officers. That's ER 211. He said he didn't know — he didn't really know whether or not Mr. Calero was the driver or the passenger. The only testimony that Mr. Calero was perhaps the driver came from hearsay, and that was objected to. There was a motion to strike. It wasn't stricken. But the only evidence before the jury that Mr. Calero, my client, was in fact the driver of this car, was hearsay evidence. Further — But, counsel, if that evidence was admitted by the trial court, then that's evidence that can be credited for purposes of determining whether or not there was sufficient evidence. Normally it would, Your Honor. However, in this case, after cross-examination, the inspector admitted on ER 219 that all he really knew was that prosecution was declined. He admitted to that. Therefore, he recanted all of his previous testimony. And this is in ER 219. Well, but that testimony was what he knew personally as opposed to what he knew from other officers. It wasn't necessarily a recantation. It was just clarifying that what he personally knew was different from what he was testifying to regarding the collective experience of all the officers. Well, Your Honor, I respectfully disagree. The question wasn't all you saw is or all you personally saw was. It was all you know. And I think that encompasses his collective knowledge from the other officers as well. So your argument is that he recanted his prior testimony? Yes, Your Honor. And I think it's pretty clear. He was asked, so all you know is that prosecution was declined on the first date. And on the date for count one, he agreed and he said yes. Was he specifically asked whether or not he disavowed the prior testimony? No, Your Honor. But I think it's pretty clear from the record. Further, this officer never ID'd my client in court. He never he it wasn't even clear whether he even saw my client. And based on the record, I don't think he ever did. There's no testimony whether or not my client was coming into the country or leaving the country. And I think under Lopez-Alvarez or any interpretation of the Corpus Selecta rule, the core of the offense has to be that there was a legal entry here. I'm sorry. Is the subsequent conduct of absolutely no relevance here? I mean, obviously, you pointed out in your brief there are significant differences between counts three and four and counts one and two. But putting the severance issue aside, isn't the evidence on three and four that there clearly was a desire to bring people into the United States for financial gain? Does it have no bearing at all in terms of assessing whether the confession is admissible on counts one and two? And if not, why not? Your Honor, I think that the evidence from counts three and four, which was prejudicial, as I argued in my second issue. Let me ask you one question. On financial gain, was that both counts three and four or just one? No, just one count, Your Honor. And you have the evidence. And this comes really to the second question, the government's second, the PSY issue. Is that sufficient corroboration that the fact that on a subsequent occasion he brought someone here for financial gain? No, Your Honor. And why is that not sufficient corroboration? Well, Your Honor, I think this case is distinguishable from PSY. Yes, it's distinguishable from PSY. Yes. The facts from PSY are considerably different, so it's not controlled by PSY. Right. But the question is, should one subsequent act of bringing someone for gain constitute sufficient corroboration of the element of financial gain? No, Your Honor. I don't believe it should. And why not? Your Honor, I think that looking at the facts in this case of counts three and four and of counts one and two, specifically count one, there's nothing – the counts three and four were so dissimilar from counts one and two that it's not really clear that anything was done for financial gain. In counts one and two, there's merely a passenger in the car or perhaps the driver of the car used a false identification. Can I interrupt you? If we were looking at counts one and two without a confession, we wouldn't be having this conversation. There would be insufficient evidence under Rule 29. But the question is whether, given the fact that there is a confession and given the fact that there's a subsequent occasion on which the same person who confessed clearly was bringing someone into the United States for financial gain, in count three, is it sufficient for corroboration, not is it sufficient for a conviction? It's a different question. Right. I think at most it would be relevant to intent, and I think it shouldn't even be admissible there. But arguably, if it were admissible, it would only be admissible to prove someone's possible intent to bring someone in, not someone's financial gain, especially considering the differences in the conduct alleged in counts three and four and counts one and two. What are the differences that you think are significant that make it not reliable for corroboration of financial gain? I'll make it brief because I'd like to have some time for rebuttal. But I think the differences that do exist in counts one and two, there allegedly was someone that was illegal driving in the car, not clear whether they're a passenger or a driver, apparently had an ID that was identification that was false. In counts three and four, on the other hand, there was a person in the trunk of the vehicle and in a secret compartment, and that person said that they were paying money. It's not at all a common scheme or plan here because in one count we're dealing with a passenger, perhaps a driver, where there's no evidence of knowledge. There's no evidence of any of the elements, really. And then in counts three and four, you have someone in a compartment admitting to different facts. And, Your Honor, I could ask two. We'll give you a minute or two for rebuttal. Okay. Thank you. Yes, Your Honor. I think that based on the differences between counts one and two and counts three and four, the differences I just mentioned, it wouldn't be probative of Mr. Calero's intent or a financial gain. And obviously the similarities in size are a lot more striking between the different counts than in counts one and two and counts three and four. I can hardly imagine a situation where an alleged alien smuggling venture could be more dissimilar between the counts, especially considering they're separated by three years in time. Thanks. Thank you, Your Honor. Good morning. May it please the Court. Christopher Tenorio for the United States. Your Honor, this case does present sufficient corroborated evidence of the core offense and of the financial gain elements. What we have suggested, as you know, is that the core offense is the bringing in of the alias. Now the statute that he's indicted for violating, the indictment says that he brought the alien in for the purpose of commercial advantage and private financial gain and in violation of Title 8, 1324A 2B2. Now 2B2 reads an offense in which the alien, an offense done for the purpose of commercial advantage or private financial gain. Now you didn't have to pick 2B2 to indict him for it, but that's what he was indicted for, an offense done for the purpose of commercial advantage or private financial gain. Understood. That's what 2 is all about. Right. And what we go to is exactly Lopez Alvarez and the cases that say we need to look at the core of the offense, the actual injury that forms the core of the offense. Here that injury is bringing someone into the United States illegally. Not under 2. If you hadn't indicted him under 2, if you'd indicted him under A instead of B2, you might say that's where you get a one-year sentence for bringing somebody into the country. But what he's indicted under is 2, which is limited to offense done for the purpose of commercial advantage or private financial gain. What we go to is even Congress's intent. When they increased the penalties for this offense and made it a greater penalty for doing it for financial gain, what they recognized was that this wasn't adding a new offense. What it was doing was recognizing aggravated circumstances in which there should be a greater penalty.  In fact, they're saying that it was the offense itself was the entry coming in and that they had to clarify it because of subsequent cases that limited the penalties. Well, that's all fine. You know, the first thing you think of when you look at a case like this is the argument you're making. Are we talking just about a sentencing enhancement or are we talking about the offense itself? The problem I have, and maybe you can persuade me otherwise, is that looking at the indictment to see what offense is charged, it's an offense that's limited to bringing somebody in for financial gain. That's the essence of the offense that you chose to indict on. I understand, and I think this might clarify a little bit. Contrary to what's implied, there is not the requirement that Mr. Calero received money or even made an agreement to receive money. As other supporting cases show, aiding and abetting someone else with a pecuniary gain is sufficient. So even though it is under 1324A2B2, there is no need even in that case, even in these cases, to prove that he received financial gain, that he made an agreement to receive it. Okay, that's issue two. For one, though, we're talking about whether the financial gain, however you show it, is part of the core offense. Well, I think that goes to it because if there is no need for him to even receive that financial gain, that's not the injury that is at the core of the offense. Well, somebody's got to receive financial gain, you're saying. Correct. It doesn't have to be him. So the core is somebody getting financial gain. No, and I respectfully disagree. The core is the injury to the United States of someone being brought in illegally. And I think it would be more akin to a murder, a murder either for hire or in the heat of passion. Whatever the motivation was, whether there was someone that was going to receive money, the core is that. You say it's charged under a statute that says the violation is murder for hire. You don't, for hire, under that statute is not part of the core offense. Well, I think that's right. And the point being we're certainly not saying that we don't have to prove this element beyond a reasonable doubt. What this is going to is how much needs to be corroborated in addition to the confession. I understand. We're talking about what a core element is. I understand. All right. I think you might want to move on to your second issue, which is whether if it is a core element, is there sufficient corroboration? Well, yes, Your Honor, I will. And as we note that the corroboration in this case was in addition to the confession. What we had was contrary to what was presented, the testimony of Inspector Oliveri was that she recognized Mr. Calero directly. Okay. Now, I'm talking about the corroboration of the financial gain aspect. The financial gain. Well, what we have specifically, in this case, we have the subsequent event from 2004 in which he was receiving money. We had altered passports of the people that he brought in in 2001 implying that business operation. The people that were there had photographs put onto altered passports. They were of different last names other than the defendant himself, insinuating, again, that there was no familial relationship or that it wasn't anything other than for a business relationship. And we have that there was no other explanation given, recognizing they don't have the burden to prove otherwise. There was still no other reasonable explanation for why they came in with the altered passports, that there was no familial relation. And that Mr. Calero was bringing them in at that time. Now, this is in addition to the confession. And as I said, depending on what the court ---- Well, that's what corroboration is. Absolutely. It's in addition to a confession. Right. And I don't believe that it's required of the government in this case, but I do believe that it was sufficient. Because the statute itself ---- well, uh-oh, I won't rehash that argument, Your Honor. So, Counsel, could you just ---- you're saying that the corroboration in this case consists of the subsequent incidents, basically? Not just that, Your Honor. One subsequent incident for payment. Correct. What else? And what else? In addition to that, the fact that the 2001 incidents, as explained by ---- testified to you by Agents Vargas and Oliveri, involved the altered passports. What we also presented were copies of the driver's license and the passport of Mr. Calero that were seized in 2001. That was actual physical evidence that was presented at trial. And that established what? That established ---- well, it established that that went to corroborate that the offense occurred. To the financial gain, however, were the fact that the passports were altered implied the business operation of that. And I think, as we argued in the Sy case, there was ---- there's no other explanation as to why they came in. There was a similar pattern. And as they ---- as this Court found Sy, that implied the aliens were to pay for their transportation, absent any other explanation. You had expert testimony from two witnesses about the practices of paying fees to escorts, the usual price. You had a whole series of similar events, not just one. And you had all of the expenses, I think, that the out-of-pocket payments that the defendant had made so that you showed it was necessary for him to receive compensation. I mean, Sy is certainly a substantially different set of facts than this. And we would concede that, Your Honor. But I think pointing to the fact that that ---- that those implications were ---- or those inferences were drawn. And the Hernandez-Franco case also said that the intent could be inferred from his conduct and other circumstantial evidence. And we're not saying that it has to meet the burden of Sy. But the evidence that we presented certainly did imply that, in addition to his contact in the 2004 incident. Thank you. Thank you. Thank you, Your Honor. Briefly, first, I do believe that the core of the offense does include financial gain. However, in this case, no evidence was presented as to ---- no corroborative evidence was presented as to any of the elements. Not the entry, not the fact that there was intent or there was knowledge of an illegal person in the vehicle. In addition, the subsequent event, assuming that had any probative value under 404B or any other evidence code, A, I don't believe that it would be admissible correctly. And B, even if it were, it wouldn't be admissible to prove financial gain. Perhaps it would somehow be admissible to prove intent. I'm not conceding that, but that's the only conceivable possibility. It would have no utility in proving the financial gain. And finally, as the Court pointed out in Sy, there was substantial evidence that one could infer financial gain from. The out-of-pocket expenses, the length that the defendant had to travel, the pattern that included substantial similarities between the offenses. In this case, there was virtually no evidence as to Counts 1 and Count 2. And I urge the Court to once again look at the record and specifically to the sites I mentioned earlier. For those reasons, I ask the Court to reverse the District Court's decision denying our motion for acquittal under Rule 29 and in addition to sever the counts. And I'll submit on that, Your Honor. Thank you. Thank you, counsel. The case just argued will be submitted.
judges: Reinhardt, Rawlinson, Fogel